# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **COLLEEN OLIVERAS,** | ) |
| | ) **CIVIL ACTION** |
| Plaintiff, | ) |
| | ) **NO. 18-10212-TSH** |
| v. | ) |
| | ) |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) |
| | ) |
| Defendant. | ) |

## ORDER AND MEMORANDUM ON PLAINTIFF'S MOTION FOR ORDER REVERSING DECISION OF COMISSIONER (Docket No. 15) AND DEFENDANT'S MOTION FOR ORDER AFFIRMING DECISION OF COMMISSIONER (Docket No. 19)

### January 2, 2019

**HILLMAN, D.J.**

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying the application of Colleen Oliveras ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff has filed a Motion for Order Reversing the Decision of the Commissioner (Docket No. 15), and the Commissioner has filed a cross Motion to Affirm the Commissioner's Decision. (Docket No. 15). For the reasons set forth below, Plaintiff's motion (Docket No. 15) is ***granted*** and Defendant's motion (Docket No. 19) is ***denied***.

### Background

*1. Procedural History*

On July 21, 2015, Plaintiff filed for disability benefits under Title II and Title XVI, alleging disability beginning July 2, 2014. (AR 206-19). Her claim was denied at the initial and reconsideration levels. (AR 103-30). Subsequently, Plaintiff requested and received an administrative hearing. (AR 146-47). On April 3, 2017, Administrative Law Judge Kim K. Griswold ("ALJ") concluded that Plaintiff was not disabled (AR 11-23).

The Appeals Council denied Plaintiff's request to review the decision, and the ALJ's decision therefore became the final decision of the Commissioner. (AR 1-4). Plaintiff has exhausted her administrative remedies, and this case is therefore now ripe for review under 42 U.S.C. 405(g).

## 2. *Medical History*

On March 7, 2014, Plaintiff saw Dr. Shubhada Javlekar, her primary care physician. Dr. Javlekar noted that Plaintiff's past medical history was significant for psoriasis, scoliosis, and that she had a history of chronic low back pain. Dr. Javlekar also reported that Plaintiff had Crohn's disease and could not tolerate nonsteroidal anti-inflammatories. Plaintiff was taking Percocet 5/325 mg four times per day for her back pain. On examination, Plaintiff had no edema, no point tenderness in her spine, and minimal sensitivity on the bilateral paraspinal muscle and lumbosacral area. In addition, her deep tendon reflexes were intact. (AR 381-82).

On July 2, 2014, Plaintiff again saw Dr. Javlekar for a follow-up to monitor her blood pressure. She had "[n]o abdominal pain, nausea, vomiting . . . diarrhea [or] constipation." (AR 368). The examination showed no abnormalities, and her Crohn's was "stable." (AR 369-70).

On February 7, 2015, Plaintiff again treated with Dr. Javlekar for low back pain. Plaintiff claimed that her back pain flared up because her work involved standing for long periods. Dr. Javlekar noted that her Crohn's "has been OK." Further, Plaintiff denied abdominal pain, nausea,

vomiting, heart burn, diarrhea, or constipation. Dr. Javlekar's revealed no edema and she reported that Plaintiff's chronic low back pain and Crohn's were well controlled on her current medications. She described Plaintiff as "medically stable." (AR 352-54).

On June 24, 2015, Plaintiff again treated with Dr. Javlekar. Dr. Javlekar noted: "The patient has a history of Crohn's disease. She is on Humira. She follows up with Dr. Papper periodically. She has been experiencing some trouble related to fistulas and she is going to set up the appointment. As far as her low back pain she takes Percocet up to four times a day as needed. She tries to space them out. Usually, the pain is under control enough for her to carryout day-to-day activity; otherwise, she has difficulty doing so." On examination, Dr. Javlekar found Plaintiff was not in any acute distress. Plaintiff's abdomen was soft and nontender and her bowel sounds were normal. Further, her extremities showed no edema. Dr. Javlekar additionally reported that Plaintiff's blood pressure was adequately controlled, and that Plaintiff stated that she periodically has some discomfort in the rectal area secondary to her Crohn's disease. (AR 329-30).

On August 27, 2015, Plaintiff filled out a Function Report in connection with her application. She reported that she cares for her five children, with help from her mother. Plaintiff indicated that she must dress and bathe slowly due to her back pain and uses the bathroom frequently due to her Crohn's. Plaintiff further reported that she prepares meals for herself and her children daily, goes shopping, drives, and attends to her children's schools. She said she has difficulty with physical activities due to her back pain but reported no problems paying attention, following instructions, or getting along with others. (AR 262-69).

On October 2, 2015, Plaintiff saw Dr. Raul Endriga for a consultative physical examination. On examination, Dr. Endriga noted that Plaintiff had no tenderness on pressure over the spinal rea and no muscle spasms. Movements of the back were normal and there was no

3

tenderness on twisting movements. Examination of the abdomen showed that it was soft and non-tender with normal bowel sounds, there was no evidence of ascites, and the liver and spleen were not palpable. The rest of the examination was unremarkable. (AR 394-96).

On December 11, 2015, Plaintiff treated with Michael Richards, PA-C, for her Crohn's disease. PA-C Richards noted that Plaintiff's symptoms had primarily been abdominal pain and diarrhea. That day, Plaintiff reported that abdominal pain had not been an issue, it was only occasional and short-lived when it did occur. Plaintiff reported experiencing nausea in the evening about one a week, which was relieved by a bowel movement. She further reported that diarrhea occurred perhaps twice a month and could last all day. She was taking Tylenol No. 3 for her back pain and believed that might cause the diarrhea. According to Plaintiff, her biggest concern over the past couple of months was diffuse joint pain with stiffness in the morning in her elbows, wrists, and knees. On examination, Plaintiff was sitting comfortably in no accuse distress. Abdominal exam showed positive bowel sounds, soft, non-tender, non-distended, with no masses and no hepatosplenomegaly. Ultimately, PA-C Richards concluded that Plaintiff's Crohn's appeared to be well-controlled on Humira, which she tolerated well. (AR 412).

The same day, PA-C Richards filled out a Medical Source Statement. He indicated that Plaintiff has a history of small bowel Crohn's, with symptoms under "fair-good control." In addition, PA-C Richards reported that Plaintiff randomly has "breakthrough" symptoms causing pain and diarrhea which last all day and that she cannot work during these episodes. (AR 400).

On December 15, 2015, PA-C Richards filled out a Crohn's and Colitis Residual Functional Capacity questionnaire. He reported that Plaintiff had chronic diarrhea, but no pain. In addition, Plaintiff's symptoms were seldom severe enough to interfere with attention and concentration, and emotional factors did not contribute to her symptoms. In PA-C Richards's

opinion, Plaintiff would "possibly" need to take restroom breaks hourly, with minutes of advanced notice needed for a restroom break. Finally, PA-C Richards opined that Plaintiff would likely be absent from work about three days per month due to her Crohn's. (AR 401-405).

On December 18, 2015, Dr. Javlekar filled out a Medial Source Statement. She indicated that Plaintiff could frequently lift/carry less than 10 pounds, that Plaintiff could stand/walk less than 2 hours per day, and that Plaintiff must periodically alternate between sitting and standing to relieve pain or discomfort. Dr. Javlekar additionally noted that Plaintiff could only occasionally climb and balance and never kneel crouch, crawl, or stoop. Finally, Dr. Javlekar noted that Plaintiff had limited ability to perform fine manipulation and that cold temperatures exacerbate her symptoms. (AR 406-409).

In both the initial and reconsideration determinations, the State Agency consulting physicians concluded Plaintiff had no severe impairments. (AR 103-14; 117-28).

## Standard of Review

This Court may not disturb the Commissioner's decision if it is grounded in substantial evidence. 42 U.S.C. 405(g); 1383(c)(3). Substantial evidence exists when there is sufficient evidence that a reasonable person could agree with the conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). Thus, this Court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion, even if the administrative record could support multiple conclusions." *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (quotation marks and citation omitted).

## Standard of Entitlement to DIB and SSI

A claimant is disabled for the purposes of DIB and SSI if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Unable to engage in any substantial gainful activity" means the claimant

> is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The Commissioner assesses a claimant's impairment under a "five-step sequential evaluation process" outlined in the statute. *See* 20 C.F.R. § 404.1520.

The hearing officer must decide: (1) whether the claimant is engaged in "substantial gainful activity"; (2) whether the claimant suffers from a "severe impairment"; (3) whether the impairment "meets or equals" one of the listed impairments contained in Appendix 1 to the regulations; (4) whether the claimant's residual functional capacity ("RFC")[1] precludes him from engaging in previous relevant employment; and (5) whether the claimant's RFC precludes him from doing any work considering the claimant's age, education, and work experience. *See id*. If the hearing officer concludes at any step of the evaluation process that the claimant is or is not disabled, the inquiry does not continue to the next step. *See* 20 C.F.R. § 404.1520.

The claimant has the burden of showing that she is disabled through step four of the analysis. At step five, however, the burden shifts to the Commissioner who must show that there

---

[1] Before proceeding to steps four and five, the Commissioner must assess the claimant's ("RFC"), which the Commissioner applies at step four to determine whether the claimant can perform past relevant work and at step five to determine if the claimant can perform any other work. *See* 20 C.F.R. § 404.1520. "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

6

are jobs in the national economy the claimant can perform notwithstanding her impairments. *See Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 7 (1st Cir. 1982).

**The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 2, 2014, her alleged onset date. (AR 13). At step two, the ALJ determined that Plaintiff's Crohn's disease and scoliosis were "severe impairments." *Id.* At step three, the ALJ held that Plaintiff "does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments" contained in Appendix 1 to the regulations. (AR 18). Then, the ALJ found that Plaintiff had the RFC to perform:

> [L]ight work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally stoop, crouch, crawl, kneel, balance, and climb ramps and stairs. She cannot climb ladders, ropes, or scaffolds. She can tolerate occasional exposure to extreme cold. She cannot tolerate exposure to hazards, such as dangerous moving machinery and unprotected heights. She may need to alter sitting and standing up to twice an hour while continuing to work. She may need ready access to a restroom (within 300 yards) and may need additional 1-2 breaks (in addition to normal breaks and lunch) of 5-10 minutes (up to 20 minutes per workday and less than 5% of the workday).

(AR 18). At step four, the ALJ determined that Plaintiff "is unable to perform any past relevant work." (AR 21). At step five, however, the ALJ found that "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform" and that she was therefore not disabled. *Id.*

**Discussion**

*1. Lay Opinion*

"With a few exceptions . . . an ALJ, as a lay person is not qualified to interpret raw data in a medical record." *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996). Therefore, for an ALJ to make a disability determination, "an expert's RFC evaluation is

7

ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person." *Santiago v. Sec'y of Health & Human Servs.*, 944 F.3d 1, 7 (1st Cir. 1991).

The First Circuit has held "that where an ALJ reaches conclusions about claimant's physical exertional capacity without any assessment of residual functional capacity by a physician, the ALJ's conclusions are not supported by substantial evidence and it is necessary to remand for the taking of further functional evidence." *Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991). Plaintiff contends that the ALJ's RFC assessment was not supported by substantial evidence because the ALJ rejected all medical opinions that assessed functional limitations. Consequently, the ALJ's RFC determination was necessarily and impermissibly based on her lay opinion.

Defendant argues first that two doctors—the state agency physicians—concluded that Plaintiff's impairments were not severe and therefore supported the ALJ's RFC determination. In *Halla v. Colvin*, the court concluded that the "Plaintiff ha[d] no basis for an objection to the RFC assessment crafted by the ALJ when it was more conservative than the recent RFC assessments of nonexamining reviewing physicians on which the ALJ was entitled to rely." 2016 WL 234802, at *7 (D. Mass. Jan. 20, 2016). Defendant argues the same rationale should preclude Plaintiff in this case from challenging the ALJ's more conservative determination. Unlike in *Halla*, however, the ALJ in this case did not rely on the reviewing physicians' opinions to craft the RFC. Indeed, the ALJ noted that she accorded the opinions of the state agency physicians "little weight because evidence received at the hearing level shows that the claimant is more limited than determined by the State agency consultants. Furthermore, the State agency consultants did not adequately consider the claimant's subjective complaints." (AR 20). Therefore, rather than relying on the

state agency physicians' opinions and crafting an RFC that was slightly more conservative, the ALJ explicitly did not rely on them at all. *See Staples v. Berryhill*, 2017 WL 1011426, at *5 (D. Me. Mar. 15, 2017) (remanding where the ALJ "expressly stated that she gave little weight to the" opinions of state agency consultants because "evidence received at the hearing level demonstrates that the plaintiff's mental impairments are severe" and therefore was "effectively a concession that the [state agency consultants'] opinions could not stand as substantial evidence of her mental RFC.").

Defendant next contends that the ALJ gave great weight to Dr. Endriga's opinions, partial weight to Dr. Javlekar's specific finding that Plaintiff has to periodically shift positions due to back pain, and partial weight to PA-C Richards conclusion that Plaintiff would possibly need hourly restroom breaks due to her Crohn's disease. (AR 20). Based on the conclusions of these doctors, the ALJ could have reasonably found that Plaintiff may need to periodically alternate between sitting and standing and may need additional restroom breaks. The balance of the RFC assessment, however, is not tethered to any medical opinions in the record that the ALJ did not reject.

Therefore, I must assess whether "the extent of functional loss, and its effect on job performance, would be apparent even to a lay person." *Santiago*, 944 F.3d at 7. I find that Plaintiff scoliosis and Crohn's disease result in functional loss that would not be apparent to a lay person. Therefore, it was erroneous for the ALJ to craft her RFC assessment without relying on expert opinion. *See Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) ("[S]ince bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record.").

Consequently, a remand is required because the ALJ's RFC assessment was not supported by substantial evidence. *See Joyner v. Colvin*, 2014 WL 12769266, at *14 (D. Mass. Dec. 12, 2014) (remanding where "the ALJ's RFC used at step four and step five lacked substantial evidence because the ALJ discounted the only mental RFC in the record as well as the other functional assessments of plaintiff's mental impairments."); *White v. Colvin*, 2014 WL 768860, at *4 (D.N.H. Feb. 26, 2014) (remanding case because, by giving only "little weight" and "some weight" to expert opinions, the ALJ "was thereby left with no expert opinion to support the functional limitations contained in her RFC."); *Staples v. Astrue*, 2010 WL 2680527, at *3 (D. Me. June 29, 2010) ("The administrative law judge essentially rejected all of these expert reports . . . Thus, in essence, she crafted her finding of the plaintiff's . . . RFC from the raw treatment and assessment evidence of record. The administrative law judge was not qualified, as a layperson, to make that assessment, which should have been entrusted to an expert or experts.").

## 2. *Rejection of Treating Opinions*

Plaintiff also argues that the ALJ erroneously rejected treating source opinions. Treating sources are typically given special deference. *See* 20 C.F.R. § 404.1527(c)(1); 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than the opinion of a source who has not examined you."); *see also Richards v. Hewlett-Packard Corp.*, 592 F.3d 232, 240 n. 9 (1st Cir. 2010) ("[T]reating physicians' opinions are ordinarily accorded deference in Social Security disability proceedings."). Thus, a treating source opinion that is well-supported by objective evidence and not inconsistent with the record is accorded "controlling weight." 20 C.F.R. § 404.1527(c)(2). "If not 'controlling,' the treating opinion must still be evaluated against six criteria in order to fulfill the mandate that the ALJ 'always give good reasons' when determining the weight a treating opinion deserves." *Santana v. Colvin*, 2016 WL 7428223,

at *3 (D. Mass. Dec. 23, 2016); *see also* 20 C.F.R. § 404.1527(c) (identifying six relevant criteria which tend to support or contradict a medical opinion).

An ALJ is "entitled to resolve conflicts in the record, and may reject the opinion of the treating physician so long as an explanation is provided and the contrary finding is supported by substantial evidence." *Tetreault v. Astrue*, 865 F. Supp. 2d 116. 125 (D. Mass. 2012) (citations omitted); *see also Keating v. Sec'y of Health & Human Services*, 848 F.2d 271, 276 (1st Cir. 1988) ("[T]reating physician's conclusions regarding total disability may be rejected by the Secretary especially when, as here, contradictory medical advisor evidence appears in the record."); *Arruda v. Barnhart*, 314 F. Supp. 2d 52, 72 (D. Mass. 2004) ("The relevant regulations further permit the ALJ to downplay the weight afforded a treating physician's assessment of the nature and severity of an impairment where, as here, it is internally inconsistent or inconsistent with other evidence in the record including treatment notes and evaluations by examining and nonexamining physicians."). However, an ALJ may not simply disregard relevant evidence, particularly when that evidence bolsters the claimant's entitlement to benefits. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ was not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion."); *Dedis v. Chater*, 956 F. Supp. 45, 51 (D. Mass 1997) ("While the ALJ is free to make a finding which gives less credence to certain evidence, he cannot simply ignore . . . the body of evidence opposed to . . . [his] view." (quotation marks and citations omitted)).

Moreover, "even when an ALJ does provide reasons for discounting a treating source opinion, remand is proper if those reasons are 'unpersuasive' or 'significantly flawed.'" *Santana v. Colvin*, 2016 WL 7428223, at *3 (quoting *Johnson v. Astrue*, 597 F.3d 409, 411-12 (1st Cir. 2009)). According to agency policy, "the decision must contain specific reasons for the weight

11

given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (emphasis added). "These rules are not formalities. They are intended to allow 'claimants [to] understand the disposition of their cases,' and provide a reviewing court with an adequate record to review disability determinations." *Perry v. Colvin*, 91 F. Supp. 3d 139, 152 (D. Mass. 2015) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

### a. Dr. Javelkar

The ALJ gave no weight to Dr. Javlekar's opinion that Plaintiff could not lift over 10 pounds or stand/walk more than two hours in an eight-hour workday because

> it not [sic] supported by treatment notes from only two appointments in two years (December 2015 and December 2016) that show the claimant had good control with Humira and that she continued on the same medication. This opinion also conflicts with the claimant's wide range of daily activities and lack of treatment or consistent allegations of this reported pain and limitations [sic] . . . Viewing the evidence in a light most favorable to the claimant, partial weight is given to Dr. Javlekar's specific statement that the claimant has to keep shifting positions due to back pain."

(AR 20).

First, the record does seem to suggest that Plaintiff's Crohn's is well-controlled with Humira. Indeed, Dr. Javlekar herself noted that Plaintiff's "Crohn's is under good remission" because of the treatment plan. (AR 444). The ALJ does not address, however, Plaintiff's treatment for her back pain, which includes Percocet up to four times daily. Plaintiff argues that it was inappropriate for the ALJ to reject statements of pain when treating physicians prescribed a strong drug such as Percocet. *See Ormon v. Astrue*, 497 Fed.Appx. 81, 86 (1st Cir. 2012) ("[T]hat both doctors did not believe that claimant was faking his back pain is clear as Dr. Dwarakanath scheduled a facet block injection, and Dr. Martinez recommended physical therapy."); *Carradine*

12

*v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (observing that it was unlikely that treating physicians would prescribe drugs and other treatment for a claimant if they believed she was lying about her pain and that "[s]uch an inference would amount to an accusation that the medical workers who treated [the claimant] were behaving unprofessionally.").

The ALJ, however, did not reject Plaintiff's statements of pain. Indeed, the ALJ found Plaintiff's scoliosis a severe impairment. Instead, the ALJ questioned the limitations resulting from the pain. Here, the ALJ concluded that Dr. Javlekar's findings conflicted with Plaintiff's everyday activities. *See Texeira v. Astrue*, 755 F. Supp. 2d 340, 347 (D. Mass. 2010) ("While a claimant's performance of household chores or the like ought not be equated to an ability to participate effectively in the workforce, evidence of daily activities can be used to support a negative credibility finding.").

In *Graves v. Colvin*, the court remanded where "the ALJ provided no explanation for his conclusory finding that Plaintiff's ability to participate in activities of daily living . . . is inconsistent with [a threating doctor's] opinions, and thus it is not clear to the court there is an inconsistency." 2016 WL 270382, at *7 (D. Mass. Jan. 21, 2016). Just like in *Graves*, Dr. Javlekar expressed in her RFC assessment her opinions regarding "Plaintiff's ability to engage in gainful activity, such as lifting particular amounts of weight, concentrating on instructions, and standing and walking during a typical workday. [Dr. Javlekar] made no reference to Plaintiff's ability to cook, drive, or shop for groceries." *Id.*; *see also Ormon v. Astrue*, 497 Fed.Appx. 81, (1st Cir. 2012) ("[T]here is a 'difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week.'" (quoting *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004))); *Waters v. Bowen*, 709 F. Supp. 278, 284 (D. Mass. 1989) ("[S]uch [sporadic and transitory] tasks can be performed

13

intermittently, when the individual is not experiencing severe pain or before the pain caused by such activity becomes overwhelming. Thus, such tasks do not require the sustained effort necessary for any substantial, sustained, and regular gainful employment."). Thus, like in *Graves*, while the ALJ concluded that Plaintiff's daily activities were inconsistent with Dr. Javlekar's RFC assessment, because of the ALJ's failure to specifically point to contradictions, it is unclear to this Court how they are inconsistent. *See* SSR 96-2p, 1996 WL 374188, at *5 (noting that the ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").[2]

Further, the ALJ noted Plaintiff's "lack of treatment or consistent allegations of this reported pain and limitations [sic]." (AR 20). Plaintiff testified, however, that she has been treating with Dr. Javlekar for "at least ten years." (AR 58). Indeed, the ALJ's opinion documents at least four visits to Dr. Javlekar in approximately a two-year period. (AR 14-17). Finally, the ALJ's conclusory contention that Plaintiff's reporting of pain and limitations has been inconsistent is not supported by references to the record and therefore not sufficiently specific for this Court to review.

Therefore, I find flaws in the ALJ's stated reasons for discounting the opinions of Dr. Javlekar. The argument that Plaintiff's lack of treatment undermines Dr. Javlekar's RFC assessment is belied by the record and therefore unpersuasive. In addition, the ALJ's remaining arguments are insufficiently specific for this Court to review.[3]

---

[2] Moreover, parts of the record regarding Plaintiff's daily life seem to corroborate Dr. Javlekar's conclusions. For instance, Plaintiff testified that she has difficulty lifting her two-year-old daughter, so they have developed a procedure where her daughter wraps her arms around Plaintiff and they both pull up together when Plaintiff lifts her daughter from the crib. (AR 53).

[3] This is not to say that there are no parts of the record that could reasonably be interpreted as inconsistent with Dr. Javlekar's RFC assessment. For instance, on April 5, 2016, Dr. Javlekar noted that, with medication, Plaintiff's back pain is only 2/10. (AR 443). The ALJ, however, did not point to these parts of the record

### b. PA-C Richards

The ALJ also gave no weight to the opinion of PA-C Richards dated December 11, 2015. The ALJ noted that PA-C Richards

> stated the claimant's symptoms were under fair-good control, but reported she has "breakthrough symptoms randomly" and cannot work during those episodes. The report of breakthrough symptoms is anecdotal and reported by the claimant. There is no medically documented evidence of breakthrough symptoms that interfere with her activities to such a degree that she sought medical treatment (as one would expect).

(AR 20). Plaintiff objects to the ALJ's rejection of PA-C Richards, but only does so in a perfunctory manner and is therefore the objection is waived. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1998) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (quotations marks and citation omitted)).

### 3. Consideration of Post-Hearing Vocational Expert Affidavit

Finally, Plaintiff argues that the ALJ erred in failing to address a vocational expert's affidavit Plaintiff submitted after her hearing. Pursuant to Social Security Ruling 96-9p, "[w]henever a VE is used, the individual has the right to review and respond to the VE evidence prior to the issuance of a decision." SSR 96-p n. 8, 1996 WL 374185.

After her hearing, Plaintiff submitted an affidavit from vocational expert David Meuse who concluded:

> A person with Ms. Oliveras' condition could suffer an intolerable number of accidents if she did not have ready access to a bathroom within 30 feet. A restroom 300 feet away is simply too far away for a person with unpredictable diarrhea. . . .

---

in her opinion and therefore failed to be sufficiently specific for this Court to review her findings. "These rules are not formalities." *Perry*, 91 F. Supp. 3d at 152.

> the need for hourly bathroom breaks would not be tolerated by any employer on an ongoing basis. . . . employers would not tolerate an employee who needs to take frequent, unscheduled and unpredictable bathroom breaks on an ongoing basis.

(AR 325-26).

An ALJ is required to consider all the evidence in a claimant's file. *DaSilva-Santos v. Astrue*, 596 F. Supp. 2d 181, 188 (D. Mass. 2009). An ALJ is not required, however, to explicitly address all of the evidence submitted in a claim. *See N.L.R.B. v. Beverly Enterprises-Massachusetts*, 174 F.3d 13, 26 (1st Cir. 1999) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); *Santiago v. Sec'y of Health & Human Servs.*, 1995 WL 30568, at *4 (1st Cir. Jan. 25, 1995) ("The ALJ was not required to recite every piece of evidence which favored appellant."). On the other hand, an ALJ may not simply ignore evidence because it is favorable to a claimant. *See Hamlin v. Colvin*, 199 F. Supp. 3d 247, 269 (D. Mass. 2016).

The ALJ's analysis at step five of the analysis was necessarily flawed since it was premised upon an RFC assessment not based on substantial evidence. Consequently, because I have already found that the step five decision lacked substantial evidentiary support, I need not examine whether the ALJ's decision not to address Plaintiff's vocational evidence provides further proof of this error.

## Conclusion

For the reasons stated above, Plaintiff's motion (Docket No. 15) is ***granted*** and Defendant's motion (Docket No. 19) is ***denied***. This case is ***remanded*** for further proceedings consistent with this opinion.

**SO ORDERED.**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**

**DISTRICT JUDGE**